# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL A. HOUK,<br><br>    Defendant. | Case No. 1:18-po-307-SAB<br><br>MEMORANDUM DECISION AFTER COURT TRIAL<br><br>(ECF Nos. 30, 31) |

On October 10, 2018, a citation was filed charging Michael A. Houk ("Defendant") with a violation of 36 C.F.R. § 2.34(a)(1), Disorderly Conduct, Fighting, Threatening, or Violence. (ECF No. 1.) On July 18, 2019, a superseding information was filed charging Defendant with violation of 18 U.S.C. § 113(a)(5), Simple Assault within the Special Maritime and Territorial Jurisdiction of the United States, and 36 C.F.R. § 2.34(a)(3), Disorderly Conduct: Unreasonable Noise.

A court trial was conducted before the undersigned on October 10, 2019. Counsel Katherine Schuh and Rule 180 Prosecutor Taylor Benninger appeared for the Government and counsel Matthew Lemke appeared with Defendant. During the trial, four witnesses testified for the Government: Stephanie Houk, Adam Bree, Ranger Analisa Skeen, and Ranger Elizabeth Dietzen. Defendant called two witness: Stephanie Houk and Adam Bree. Four exhibits were admitted into evidence: a photograph of keys and a keyring and three photographs of the victim's

1

hand. The Court set a briefing schedule for Defendant to file a motion to strike testimony and the Government to provide supplemental briefing on the issue of jurisdiction. On October 31, 2019, Defendant filed a motion to strike the testimony of Ranger Skeen for failure to comply with the Jencks Act and Federal Rule of Criminal Procedure 26.2. On November 5, 2019, the Government filed an opposition to Defendant's motion to strike.

Having considered the evidence presented during the trial of this matter, the Court issues the following order finding Defendant Houk not guilty of a violation of 18 U.S.C. § 113(a)(5), Simple Assault within the Special Maritime and Territorial Jurisdiction of the United States, and guilty of a violation of 36 C.F.R. § 2.34(a)(3), Disorderly Conduct: Unreasonable Noise.

## I.

## FACTUAL FINDINGS

On June 15, 2018, Stephanie Houk (hereafter "Ms. Houk") drove to her family's cabin in Mineral Canyon which is in Sequoia National Park from Fresno, arriving around 8:30 p.m. (Transcript of Proceedings (hereafter "T.R.") 13:2-5, 20-14:2, 14:23-15:4, 19-24.) The key to the cabin is normally kept at the residence, but Ms. Houk removed the key to make copies when she had opened the cabin for the season approximately a month earlier. (T.R. 18:14-23; 45:12-22.)

Ms. Houk arrived at the cabin after dark and saw a broken window and a lantern on inside the cabin. (T.R. 15:23-16:9.) She looked through the window and saw a woman and child that she did not recognize and yelled that they were not supposed to be in the cabin. (T.R. 16:19-17:3.) At that time, she saw Defendant, who is her brother, come out of the bedroom. (T.R. 17:5-22, 24-25. Defendant appeared to be upset and commented that it would have been nice had she returned his phone calls. (T.R. 17:24-18:6.)

Defendant told Ms. Houk to pick a bed for the night, but she was worried about staying in the cabin when he was upset with her and told him that she would just camp. (T.R. 19:3-13.) Ms. Houk grabbed a flashlight and returned to her car which was about fifteen steps down the hill. (T.R. 19:14-16, 24-20:12.) Defendant followed her and demanded that she give him the key to the cabin. (T.R. 20:15-16.) Ms. Houk was panicked because she had no cell reception

and could not get away from the situation. (T.R. 20:18-20.) She told Defendant to stop following her and tried to go as fast as she could to get in the car and lock the doors. (T.R. 20:20-23.) She got into the driver's seat but before she could lock the doors, Defendant opened the passenger door and started struggling with her for the keys. (T.R. 21:3-9, 18-22, 22:4-8.) Ms. Houk told Defendant to get out of the car and leave her alone. (T.R. 22:9-14.) As they were struggling over the keys, Defendant grabbed Ms. Houk's wrist and pried the keys from her hand, causing the keys to be separated from the fob and injuring her pinky finger. (T.R. 22:12-18, 23:1-7.)

After Defendant got the keys, he exited the vehicle. (T.R. 27:19-22.) Ms. Houk saw lights from the nearby road and went to get help to get her keys back. (T.R. 28:7-15.) Adam Bree was driving by in his truck with his two-and-half to three-year-old daughter in the vehicle. (T.R. 28:17-22; 71:13-72:2.) He noticed that Ms. Houk was upset and crying and stopped his truck. (T.R. 72:6-9.) Ms. Houk told him that she had been attacked by her brother and asked for his help to get her keys back. (T.R. 30:16-31:22.) Defendant who was on the porch, started coming toward the truck. (T.R. 31:23-32:2.) Defendant was loud, using inappropriate language, and calling Mr. Bree out of his vehicle. (T.R. 72:11-13, 73:2-3; 75:14-21.) Mr. Bree told Defendant to quiet down because he did not want him to use expletives in front of his child. (T.R. 73:4-6.) Mr. Bree went to drop his daughter off, telling Ms. Houk that he would return with his father to get her keys back. (T.R. 34:12-14; 72:13-17.)

Ms. Houk locked herself in her car and, while she was waiting, Defendant came out of the cabin. (T.R. 34:18-35:4.) He told her to get out of the car to get her keys and that if she would not then he would throw them into the woods. (T.R. 35:4-8.) When Ms. Houk refused to get out of the car, Defendant walked into the woods and then went into the cabin. (T.R. 35:11-15.) When Mr. Bree returned with his father, they looked in the woods for the keys and Defendant came out telling them they would not find the keys there and that Ms. Houk needed to come inside the cabin to talk to him. (T.R. 35:16-11; 73:17-20.) Defendant was still "running his mouth" as if he wanted a physical altercation. (T.R. 73:21-25.) The woman inside the cabin came out and told Defendant to give Ms. Houk her keys. (T.R. 36:13-15.)

The following day, Ms. Houk went to the ranger station around mid-day to file a report on the incident. (T.R. 38:17-25; 79:13-17.) Ranger Skeen was working at the ranger station and sat with Ms. Houk until a law enforcement ranger arrived. (T.R. 79:9-80:15.)

## II.

## DISCUSSION AND DECISION

Defendant has been charged with a violation of 18 U.S.C. § 113(a)(5), Simple Assault within the Special Maritime and Territorial Jurisdiction of the United States, and 36 U.S.C. § 2.34(a)(3), Disorderly Conduct: Unreasonable Noise.

### A. Simple Assault

Section 113 does not define assault, so the Ninth Circuit has adopted the common law definitions: (1) "a willful attempt to inflict injury upon the person of another," (attempted battery) or (2) "a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." United States v. Lewellyn, 481 F.3d 695, 697 (9th Cir. 2007) (citing United States v. Dupree, 544 F.2d 1050, 1051 (9th Cir. 1976); and United States v. Juvenile Male, 930 F.2d 727, 728 (9th Cir. 1991)); United States v. Sutton, 527 F. App'x 611, 612 n.1 (9th Cir. 2013).

To prove simple assault in violation of 18 U.S.C. § 113(a)(5), the Government must prove beyond a reasonable doubt that 1) the defendant assaulted Ms. Houk by willfully attempting to inflict injury upon her; and 2) the assault took place within the special maritime and territorial jurisdiction of the United States.

"[T]he government must prove the jurisdictional element in a federal criminal statute beyond a reasonable doubt, like any other element of the offense[.]" United States v. Reza-Ramos, 816 F.3d 1110, 1120 (9th Cir. 2016) (quoting United States v. Gomez, 87 F.3d 1093, 1096–97 (9th Cir. 1996)). The Court finds that the Government failed to meet their burden to prove beyond a reasonable doubt that the assault took place within the special maritime and territorial jurisdiction of the United States.[1]

---

[1] The parties were provided with the opportunity to file supplemental briefing regarding the sufficiency of the evidence on the jurisdictional elements of the offenses. Neither party filed supplemental briefing on these issues nor did they address jurisdiction in the motion to strike or opposition.

Section 113 applies to assaults that are committed "within the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 113(a). The term "special maritime and territorial jurisdiction of the United States" is defined in the United States Code. 18 U.S.C. § 7. As relevant here, the "special maritime and territorial jurisdiction of the United States" would exist for "[a]ny lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof. . . ." 18 U.S.C. § 7.

During the trial of this matter, Ms. Houk testified that the cabin was at Mineral King within the Sequoia National Park. (T.R. 13:2-21.) Ranger Skeen testified that Mineral King Road is located within the Sequoia National Park. (T.R. 79:3-6.) Ranger Dietzen testified that Mineral King is within Sequoia National Park. (T.R. 95:4-16.) Rangers Skeen and Dietzen also testified that Mineral King and Sequoia National Park are within the legislative jurisdiction of the United States. (T.R. 78:20-79:2, 95:3-12.) When questioned as to what it meant for the park to be within the legislative jurisdiction of the United States, Ranger Dietzen testified that the park was concurrent to both the state and federal government authority in the area. (T.R. 96:5-9.) When asked to further explain, Ranger Dietzen testified that she has the right to exercise authority on behalf of both the federal government and the State of California. (T.R. 96:12-16.)

The testimony at trial did not prove beyond a reasonable doubt that the land on which the incident occurred was reserved or acquired for the use of the United States. Although there was testimony that the ranger had concurrent jurisdiction to enforce the law, this is insufficient to prove that the area was within the "special maritime and territorial jurisdiction of the United States."

As the government failed to establish the jurisdictional element of the offense, the Court finds the defendant not guilty of simple assault in violation of 18 U.S.C. § 113(a)(5). Accordingly, the Court declines to address Defendant's motion to strike the testimony of Ranger Skeen as it is only relevant to the charge of assault.[2]

---

[2] Defendant has moved to strike the testimony of Ranger Skeen arguing that it violates the Jencks Act and Rule 26.2 of the Federal Rules of Criminal Procedure. (ECF No. 30.) Defendant argues that the testimony must be stricken because Ranger Skeen was the first official to take Ms. Houk's statement and the there is no substitute for the missing statement. While the Court has not considered any testimony regarding Ms. Houk's contact with Ranger

## C. Disorderly Conduct

To prove disorderly conduct by unreasonable noise in violation of 36 U.S.C. § 2.34(a)(3), the Government must prove beyond a reasonable doubt that 1) the defendant intentionally caused or knowingly or recklessly created a risk of alarm, nuisance, jeopardy or violence; 2) the defendant made noise that is unreasonable, considering the nature and purpose of the actor's conduct, location, time of day or night, and other factors that would govern the conduct of a reasonably prudent person under the circumstances; 3) the defendant acted in public; and 4) the conduct occurred within a national park. 36 U.S.C. § 2.34(a)(3); United States v. Taylor, 258 F.3d 1065, 1068 (9th Cir. 2001).

### 1. Whether Defendant Caused or Knowingly or Recklessly Created a Risk of Alarm, Nuisance, Jeopardy or Violence by an Unreasonable Noise

The Court finds little case law addressing what constitutes unreasonable noise under section 2.34(a)(3). In United States v. Mazzetti, No. 6:11-MJ-00090-MJS-1, 2012 WL 1835300 (E.D. Cal. May 18, 2012), the defendant was camping with several other individuals in Yosemite National Park. Rangers were dispatched to the campsite to investigate a complaint of individuals behaving in a disorderly manner. Id. at *1. On arrival the officers were informed that a vehicle in the campsite had been driving at high speeds around the campground with one of the group riding on the outside of the vehicle yelling obscenities at a slower moving vehicle that was in front of it. Id. The rangers observed about eight people in the campsite and the entire group was directed to sit at a picnic table and keep their hands visible. Id. at *1-2. One of the individuals admitted to being the driver of the vehicle and that he had exchanged words with some older men who had asked where they were going. Id. at *2. After several minutes, the defendant stated that she was not involved and got up from the table and walked about five feet away. Id. She was advised to return to the table and sit down due to the number of individuals at the campsite. Id. The defendant refused to return to the table and she was given a chair to sit in and was told not to get up. Id.

---

Skeen on the date following the incident, the Court will consider Ranger Skeen's testimony to the extent that it addresses the jurisdictional element of the offenses.

The defendant got into a discussion with the rangers. The group was asked for identification and the defendant got up to retrieve her driver's license, after a brief scuffle with the ranger, she was ordered to sit down. Id. at *3. As the ranger ordered her to sit down and attempted to physically restrain her, the defendant backed away from his grasp. Id. The ranger threatened to use a taser on her and she resumed her seat. Id. The ranger called for backup and the group was told that officer safety concerns dictated that they all needed to obey his commands. Id. When back up rangers arrived, they discussed the situation and were told that only the defendant would be cited and that the ranger did not intend to arrest the defendant. Id. at *4. The ranger than changed his mind and decided to arrest the defendant for interfering with law enforcement. Id.

The ranger had the defendant stand and walk a short distance from the group where she was placed in handcuffs. Id. The defendant was escorted away from the campsite and was told to stand facing the ranger's vehicle. Id. As she was searched, the defendant was verbally protesting and twisting her head while her hair was searched. Id. The ranger told her that he was going to search her breasts and groin and she reacted in a manner described as "hysterical, extremely loud screaming and twisting of her body" while standing and on the ground to avoid the ranger's hands. Id. (emphasis in original). The defendant kicked the rangers while she was on the ground being searched. Id. No contraband was found and the defendant was placed in the ranger's vehicle where "[her] exceedingly loud, continuous screaming continued for the several additional minutes the vehicle remained near the scene" and continued as she was transported to the holding facility. Id. The defendant was arrested and charged with, as relevant here, disorderly conduct under 36 U.S.C. § 2.34(a)(3). Id.

In addressing the charge of disorderly conduct due to unreasonable noise, the court considered that the conduct occurred during the day when one would expect loud noise in the campsite. Id. at *15 (see 36 C.F.R. §§ 2.10, 2.12 (noise up to 60 decibels is acceptable, unless during quiet hours from 10:00 p.m. to 6:00 a.m.)). The court found it significant that the noise was made while the defendant was being subjected to an unlawful arrest. Id. The defendant had testified to a history of sexual abuse and the court found it may well have been an appropriate

response to scream during the search. Id. Although, the fact that the defendant continued to scream for an extended period of time once the search ended is an indication that the screaming may have been a calculated objective, the court could not find beyond a reasonable doubt that the verbal response to the search was unreasonable or unlawful. Id.

However, the defendant continued what could be described as blood curdling screams for a significant period of time after the search was completed. Id. The defendant continued screaming after the search had ended and she was isolated in the law enforcement vehicle. Id. The court found that the continued screaming was for the purpose of intentional disruption and was loud enough even from inside the vehicle to accomplish such disruption and violate the regulation. Id.

In construing similarly worded statutes, the Superior Court of Pennsylvania held that the intent requirement can be met even where the actor's intent was to send a message to a specific individual rather than to cause public inconvenience, annoyance or alarm. Com. v. Maerz, 2005 PA Super 267, ¶ 8, 879 A.2d 1267, 1269 (2005). The content of the speech should be considered only to determine whether the speaker intended to cause public annoyance, alarm, etc. and that ultimately what constitutes unreasonable noise is determined by the volume of the speech and not its content. Com. v. Maerz, 2005 PA Super 267, ¶ 9, 879 A.2d 1267, 1269 (2005). While shouting can form the basis of a disorderly conduct charge, a two-word unamplified outburst has been found to not constitute disorderly conduct, even twenty-seconds of public shouting involving foul language was insufficient to sustain a conviction. Thurairajah v. City of Fort Smith, Arkansas, 925 F.3d 979, 983 (8th Cir. 2019); see also Maerz, 879 A.2d at 1268 (defendant going out onto porch and yelling across the street, "[y]ou goddamn, motherfucking son of a bitch, what the hell are you doing, get that light off my house" at a man walking his dog insufficient to sustain a conviction for disorderly conduct charge based on unreasonable noise). Rather, cases where shouting was part of a scenario that resulted in a finding of disorderly conduct involved extended loud shouting and disruptive behavior or amplified sound. Thurairajah, 925 F.3d at 983. Unreasonable noise has been found to mean "a noise of a type or volume that a reasonable person, under the circumstances, would not tolerate." Stern v.

1  Shammas, No. 12-CV-5210 NGG RER, 2015 WL 6440647, at *3 (E.D.N.Y. Oct. 21, 2015),
2  aff'd sub nom. Stern v. City of New York, 665 F. App'x 27 (2d Cir. 2016) (citations omitted).

3  Here, the incident occurred in a very remote and very quiet area of the park after dark,
4  around 8:30 in the evening. (T.R. 14:19-22, 15:19-24.) The cabin is in a remote area of the park
5  where there is a "cabinny [sic] resort." (T.R. 13:24-14:2.) The cabin is located off Mineral King
6  Road and there is a cabin across the street and a cabin up the hill that you can see from the road.
7  (T.R. 13:20-14:22.) Being that the area is remote and sparsely populated, it would not be
8  expected to hear loud noise at this time of the evening.

9  Ms. Houk testified that Defendant was upset with her when she first saw him in the cabin.
10 (T.R. 17:23-18:1.) When Ms. Houk told him that she was not going to stay in the cabin he
11 became more agitated. (T.R. 19:17-21.) As she was attempting to get to her car, Defendant
12 followed her becoming more agitated and demanding the key to the cabin. (T.R. 20:1-16.) Ms.
13 Houk felt panicked and had asked him to stop following her. (T.R. 20:18-22.) Ms. Houk got to
14 her car and Defendant entered the car before she could lock the passenger door. (T.R. 21:18-
15 22:4.) She was telling him as loudly as she could to get out of her car. (T.R. 22:9-11.) She was
16 screaming hoping that someone in the cabin would come out. (TR. 22:12-14.)

17 After they fought over the keys, Ms. Houk saw the lights of a car coming and got out of
18 her key to try to get the car to stop. (T.R. 28:7-15.) When Defendant saw Ms. Houk heading
19 toward the truck, he started coming back toward the truck. (T.R. 31:24-32:1.) Ms. Houk told
20 Mr. Bree that she had been attacked by her brother and asked for his help getting her keys back.
21 (T.R. 31:18-22.) His voice was rising as he responded to what she told Mr. Bree. (T.R. 32:6-8.)
22 Ms. Houk and Defendant were right next to the truck, next to the road. (T.R. 32:1-2.) Defendant
23 was aggressive, loud, and obnoxious. (T.R. 32:3-7; 72:11-12.) Defendant told Mr. Bree that Ms.
24 Houk was getting a divorce and was speaking loudly. (T.R. 32:10-12.) Defendant was using
25 inappropriate language and Mr. Bree felt that Plaintiff was challenging him to get out of his
26 vehicle. (T.R. 72:12-13, 75:29-21.) Plaintiff appeared agitated and looked and acted as if he had
27 a little too much to drink. (T.R. 72:23-73:1.) He was speaking loudly, yelling. (T.R. 32:12-14;
28 73:2-3.) Defendant's voice kept getting louder and Mr. Bree asked him to lower his voice

because his daughter was in the car. (T.R. 34:6-9; 73:4-6.) Defendant started walking back to the cabin. (T.R. 34:10-11.)

The testimony at trial established that Defendant was speaking loudly and yelling. He was loud enough that Mr. Bree was concerned about his young daughter hearing the language used while she was sitting in the vehicle. Ms. Houk testified that when he was speaking to Mr. Bree "[h]e just kind of was speaking loudly" and she would consider it yelling. (T.R. 32:10-14.)

After Mr. Bree left to drop his daughter off, Ms. Houk got back in her car to wait for him to return and Defendant came out of the cabin several times demanding that Ms. Houk talk to him and even threatened to throw her keys into the woods and acted as if he had done so. (T.R. 34:17-19, 34:20-25, 35:1-8.) When Mr. Bree came back with his father about three to five minutes after he left to drop off his daughter, Defendant was still "running his mouth" as if he wanted a physical altercation. (T.R. 73:17-25.) They had a conversation on the porch for about three minutes before Defendant's girlfriend came out of the cabin and told Defendant to give Ms. Houk back her keys. (T.R. 36:9-17.)

The evidence at trial established that Plaintiff was speaking loudly or yelling over an extended period of time while arguing with Ms. Houk over the keys to the cabin. This conduct continued when Mr. Bree came upon the incident and when Mr. Bree returned three to five minutes later. Further, Mr. Bree testified that he felt that Defendant was challenging him to a physical altercation by his words and behavior. The Court finds that the Government has proved beyond a reasonable doubt that Defendant's conduct was knowing or reckless to the risk of causing public alarm, nuisance, jeopardy or violence and the noise was unreasonable, considering the nature and purpose of Defendant's conduct, location, time of day or night, and other factors that would govern the conduct of a reasonably prudent person under the circumstances.

2. <u>Whether Defendant's Conduct was Public</u>

The incident occurred outside the cabin near Mineral King Road. Section 2.34 does not define public, but the Ninth Circuit has adopted the definition in the Model Penal Code of "affecting or likely to affect persons in a place to which the public or a substantial group has

access. . . ." United States v. Albers, 226 F.3d 989, 995 (9th Cir. 2000) (quoting Model Penal Code § 250.2(1) (1962)); United States v. Coutchavlis, 260 F.3d 1149, 1154 (9th Cir. 2001). Among the places included are public highways. Coutchavlis, 260 F.3d at 1154 (quoting Model Penal Code § 250.2(1)). While the incident here occurred in a somewhat remote area of the park, "a national park is the quintessential public place." United States v. Mather, 902 F.Supp. 560, 564 (E.D. Pa. 1995), aff'd, 91 F.3d 127 (3d Cir. 1996) (it is a "practical reality that every square inch of the Park's grounds is public.") Defendant's conduct occurred outside of the cabin along the road through the park. While it is not a requirement that a member of the public witness or be affected by the conduct, Coutchavlis, 260 F.3d at 1155, in this instance, Mr. Bree was travelling on the roadway and stopped at which time Defendant was along the roadway and was yelling loudly enough that Mr. Bree was concerned that his young daughter, who was seated inside his vehicle, would hear the language that was being used.

### 3. Whether the Conduct Occurred in the National Park

Ms. Houk testified that the family cabin is in Mineral King which is in Sequoia National Park. (T.R. 13:2-21.) As discussed above, Ranger Dietzen also testified that Mineral King was within Sequoia National Park. (T.R. 95:3-22.) Therefore, the evidence demonstrates that the incident occurred within the national park.

### 4. The Government Proved the Elements of the Offense Beyond a Reasonable Doubt

Based on the evidence presented by the parties during the trial, the Court finds that the Government has proved beyond a reasonable doubt that Defendant Houk is guilty of a violation of 36 U.S.C. § 2.34(a)(3), Disorderly Conduct by Unreasonable Noise. Here, the evidence presented by Defendant did not refute the evidence of guilt presented by the Government.

///

///

///

///

///

///

## III.

## CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that this matter is set for sentencing on December 16, 2019, at 2:00 p.m. in Courtroom 9. The parties may file a sentencing memorandum three days prior to the sentencing hearing. Defendant is required to be present for sentencing. If the parties need additional time for sentencing the court will entertain a stipulation or if no stipulation a motion on shortened time.

IT IS SO ORDERED.

Dated: **December 9, 2019**

_____
UNITED STATES MAGISTRATE JUDGE